NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASHLEY GEORGES, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 21-cv-17394 |
| | : | |
| v. | : | |
| | : | |
| OFFICER MCELROY, | : | **OPINION** |
| | : | |
| Defendant. | : | |
| | : | |

**CECCHI, District Judge.**

*Pro se* Plaintiff Ashley Georges ("Plaintiff"), an inmate at East Jersey State Prison ("EJSP") seeks to commence a civil rights action against EJSP Officer McElroy ("McElroy") by filing a Complaint alleging that McElroy denied Plaintiff law library access. ECF No. 1. Plaintiff seeks to proceed *in forma pauperis* ("IFP"). ECF No. 1-1. Plaintiff also seeks this Court's recusal. ECF No. 2. For the reasons below, this Court will grant IFP and, after screening the Complaint, dismiss the Complaint without prejudice. Further, the Court will deny recusal.

**I.     BACKGROUND**

For the purposes of screening, this Court presumes the Complaint's allegations to be true. On June 24, 2021, Plaintiff, known for helping other prisoners with their legal work, was allegedly at the EJSP law library preparing legal documents for a pending case. ECF No. 1 at 8. Plaintiff contends that McElroy, whose "job consists of security" and "has no say concerning" law library scheduling, was also in the law library that day. *Id.* Plaintiff asserts that McElroy "has a history of harassing and punishing inmates who file grievances against himself" and other staff members. *Id.*

Plaintiff alleges that while he was working in the law library, McElroy ordered Plaintiff to leave before his allotted library time had expired. *Id.* at 9. When Plaintiff asked to save his work before exiting, McElroy allegedly threatened to deny Plaintiff future access to the law library and to file a disciplinary charge against him. *Id.* Plaintiff asserts that, as a result of McElroy's threats, he was "deterred from writing the incident up and had to leave the law library without being able to save all his legal work." *Id.*

Plaintiff further alleges that the following day McElroy improperly impeded Plaintiff's use of the law library and levied additional threats against him when he confronted McElroy about his decision to restrict Plaintiff's library time. Specifically, Plaintiff asserts that McElroy again threatened to file a disciplinary charge against Plaintiff. *Id.* at 10. Plaintiff further contends that McElroy also asked a supervisor present during the incident to revoke Plaintiff's library privileges completely, and to file disciplinary charges against Plaintiff for using the library too frequently. *Id.* Plaintiff contends that the supervisor first attempted to send Plaintiff to his cell and to come back later. *Id.* at 10. After conferring with the law librarian, who explained Plaintiff's access was limited to that particular scheduling period, the supervisor took no action, indicating to "McElroy that he did not have the authority to deny Plaintiff access to the law library and thus had to allow him access." *Id.* at 10–11.

Plaintiff asserts he filed a grievance and appeal, but each resulted in a determination that "nothing was wrong." *Id.* at 5, ¶ 5. Plaintiff alleges that McElroy violated Plaintiff's First Amendment rights by denying him law library access as retaliation for past grievances, and threatening to file disciplinary charges to discourage Plaintiff from filing future grievances. *Id.* at 11, ¶¶12-15.

II.   **DISCUSSION**

### A. IFP

The Prison Litigation Reform Act of 1995, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) (the "PLRA"), which amended 28 U.S.C. § 1915, establishes certain financial requirements for prisoners who are attempting to bring a civil action IFP. Pursuant to the PLRA, a prisoner bringing a civil action IFP must submit an affidavit, including a statement of all assets, which states that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(2). Here, Plaintiff has complied with the PLRA's requirements and demonstrated indigence. ECF No. 1-1. Accordingly, IFP status is appropriate.

### B. Screening Standards

Under the PLRA, district courts must review complaints in those civil actions in which a plaintiff is proceeding IFP. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive screening, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). "A *pro se* plaintiff's well-pleaded complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a 'short and plain' statement of a cause of action." *Johnson v. Koehler*, No. 18-00807, 2019 WL 1231679, at *3 (M.D. Pa. Mar. 15, 2019).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v.*

*Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

    **C.**    **Analysis of Complaint**

Plaintiff alleges that McElroy retaliated against Plaintiff by denying law library access for past grievances and lawsuits. "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000).

Plaintiff has not alleged any substantive adverse action. Of course, Plaintiff is correct that he has the right to access from the courts, and therefore the right to be free from retaliation from exercising that right. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). "Prisoners must be allowed 'adequate, effective and meaningful' access to the courts. *Petlock v. Nadrowski*, No. 16-310, 2016 WL 7173781, at *10 (D.N.J. Dec. 8, 2016) (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give convicted inmates access to law libraries or direct legal assistance)). Similarly, an inmate's filing of a grievance constitutes conduct protected by the First Amendment. *See Laurensau v. Romarowics*, 528 F. App'x 136, 139 (3d Cir. 2013); *Mack*, 427 F. App'x at 72 ("Filing a formal prison grievance clearly constitutes protected activity....").

However, "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Where a prisoner asserts that a defendant's actions, including law library access, "have inhibited the opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d 198 (citing *Christopher v. Harbury*, 536 U.S. 403, 415, (2002)). Thus, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205–06 (citing *Christopher*, 536 U.S. at 416–17). Indeed, in the context of alleging the underlying claim that the plaintiff was prevented from pursuing, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued[.]" *Christopher*, 536 U.S. at 417.

Here, Plaintiff has not provided any information about the legal document he was attempting to save on June 24, 2021 (or any other), or any concrete injury suffered as the result of being unable to save his work before leaving the library at McElroy's directive. Similarly, with respect to events of the next day, June 25, 2021, whereupon Plaintiff attempted to enter the library, Plaintiff references an interaction with McElroy, but does not actually allege that he was denied access. ECF No. 1 at 9, *et seq.* Further, regarding the supervisor, even after the supervisor initially told Plaintiff to go back to his cell, Plaintiff does not state that he actually *did* go back to his cell, or that he was ultimately unable to use the library that day. *Id.* Plaintiff does not allege any other denial of access, or injury flowing from these incidents. At most, both situations are examples of *de minimis*, non-actionable behavior. *Turner v. Johnson*, No. 17–541, 2020 WL 6323698, at *6

(D.N.J. Oct. 28, 2020) (dismissing claim that plaintiff was prevented from visiting the law library one afternoon in retaliation for filing grievances and lawsuit), citing *Meeks v. Schofield*, 625 F. App'x 697, 701-02 (6th Cir. 2015) (denial of access to law library on one occasion was *de minimis* conduct that did not constitute an adverse action); *Miller v. Sanchez*, No. 20–06–GW, 2020 WL 528010, at *6 (C.D. Cal. Feb. 3, 2020) (assignment to a job that conflicted with law library access for a single day is *de minimis* and does not rise to the level of an adverse action that would deter a prisoner of "ordinary firmness" from further First Amendment activities).

Nor can McElroy's conduct be read as deterring Plaintiff's exercise of his right to access the courts, as evidenced by Plaintiff's subsequent grievances and this Complaint. *Monroe v. Phelps*, 520 F. App'x 67, 71 (3d Cir. 2013) (plaintiff was not "subject to adverse actions of the type that would deter a prisoner of ordinary firmness from exercising his constitutional rights" where plaintiff filed several grievances after the incident). Accordingly, Plaintiff has not adequately alleged retaliation. Because, however, it is plausible that Plaintiff could amend his Complaint to allege additional facts, this dismissal will be without prejudice.

### D. Motion for Recusal

Finally, during the screening process, Plaintiff filed a motion for recusal (ECF No. 2) arguing that, because Plaintiff filed a complaint against the undersigned, the Court cannot be impartial in this case. "The test for recusal under § 455(a) is whether a reasonable person who is aware of all of the facts might reasonably question a judge's impartiality." *In re Onishi*, 856 F. App'x 426, 427 (3d Cir. 2021).

Plaintiff has presented no allegations of judicial bias. Rather, Plaintiff makes the conclusory assertion that he has "reason to believe" that he will not receive a fair and impartial review in this matter based on a complaint that he filed against the undersigned. ECF No. 2.

Plaintiff's contention is without merit as this Court maintains no bias towards Plaintiff and has endeavored to rule on his motions based on the "reasoned assessment of the applicable law, and no other factors." *Binsack v. Lackawanna Cty. Dist. Attorney's Off.,* No. 08-1166, 2009 WL 3739408, at *2 (M.D. Pa. Nov. 6, 2009) (finding that the district court judge did not err in failing to recuse himself even though the defendant had threatened to file a judicial misconduct complaint against the judge); *see also United States v. Vampire Nation*, 451 F.3d 189, 208 (3d Cir. 2006) (holding that the court "is unwilling to conclude that [a] Judge erred by not *sua sponte* recusing [himself]" without explicit evidence of bias, even assuming "actual knowledge" of a misconduct complaint); *Bey v. Bruey*, No. 09–1092, 2010 WL 276076, at *1 (D.N.J. Jan 19, 2010) ("Conclusory allegations of bias are insufficient to warrant recusal.") (citing *Hill v. Carpenter*, 323 F. App'x 167, 170 (3d Cir. 2009)).  "Moreover, the Court recognizes that to submit to recusal because a party threatens baseless misconduct charges would be to allow litigants to choose their judge based on a mere threat." *Binsack*, 2009 WL 3739408, at *2.  Accordingly, recusal is not warranted.

### III.   CONCLUSION

For the reasons above, Plaintiff's IFP application will be **GRANTED**, the Complaint will be **DISMISSED WITHOUT PRJEUDICE**, and Plaintiff's recusal motion will be **DENIED**.  An appropriate Order follows.

s/ Claire C. Cecchi<br>
**Hon. Claire C. Cecchi, U.S.D.J.**