<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASHLEY GEORGES, | No. 21cv17394 (EP) (JBC) |
| Plaintiff, | |
| v. | **OPINION** |
| OFFICER MCELROY, | |
| Defendant. | |

**PADIN, District Judge.**

Plaintiff Ashley Georges, a state prisoner in South Woods State Prison, New Jersey, filed an Amended Complaint pursuant to 42 U.S.C. § 1983 against Defendant Officer McElroy, a correctional officer at East Jersey State Prison ("EJSP"), for retaliation and interference with Georges' access to the courts.  D.E. 6 ("Am. Compl.").  Because Georges has been granted *in forma pauperis* ("IFP") status, D.E. 4, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915(e)(2).

For the reasons below, the Court will allow the Amended Complaint's retaliation claim against Officer McElroy in his individual capacity stemming from Officer McElroy's June 24, 2021 actions to **PROCEED**,[1] the access-to-courts claim and retaliation claim stemming from

---

[1] The Court's preliminary review pursuant to 28 U.S.C. § 1915 does not determine whether the allegations in the Amended Complaint would survive a properly supported motion to dismiss filed by a defendant after service.  *See Richardson v. Cascade Skating Rink*, No. 19-08935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) (internal quotation marks omitted) ("[T]his Court

Officer McElroy's June 25, 2021 actions will be **DISMISSED** *without prejudice* for failure to state a claim, and Georges' requests for declaratory and injunctive relief will be **DISMISSED** *as moot*.

## I.     BACKGROUND

Georges filed his original Complaint against Officer McElroy on September 22, 2021.  D.E. 1.  On May 31, 2022, the Honorable Claire C. Cecchi, D.N.J., granted Georges' IFP application and dismissed the Complaint for failure to state a claim.  D.E. 4.  Georges was permitted to file an Amended Complaint, which he did on July 28, 2022.[2]  Am. Compl.

According to the Amended Complaint, Georges was well known at EJSP "for helping other prisoners with their legal work, as well as for filing grievances whenever his state or federal constitutional rights are threaten[ed] or violated by prison staff."  *Id.* ¶ 4.  Officer McElroy was a correctional officer whose "duties consist[ed] of securing the 'Old School Program Center' area of [EJSP] as custody staff."  *Id.* ¶ 1.  Officer McElroy's "duties [did] not consist[] of scheduling inmates to attend the law library or any programs at the Program Center."  *Id.* ¶ 2.  Georges alleges that Officer McElroy had "a history of harassing and punishing inmates who file grievances against him[] or against any staff member of the prison[,]" and knew that Georges frequently helped other prisoners with their legal work.  *Id.* ¶¶ 3-4.

On June 24, 2021, Georges was in EJSP's law library working on a pending case when Officer McElroy confronted him.  *Id.* ¶ 1.  "While [Georges] was saving his legal work from a computer, [Officer] McElroy walked into the law library and ordered [Georges] to leave the law library immediately, using a disrespectful menacing tone of voice."  *Id.* ¶ 5.  Georges did not follow

---

recognizes [a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment.").

[2] This case was reassigned to the undersigned on August 17, 2023.  D.E. 9.

the instruction; instead, he "calmly and respectfully" told Officer McElroy that "there were fifteen minutes remaining of law library time, that he was saving his legal work and would exit the law library immediately after the saving process is completed which would only take less than five minutes." *Id.* Officer McElroy threatened to deny Georges future access to the law library "if he did not leave the law library instantly . . . ." *Id.* ¶ 6. Georges responded that he "was going to write up the incident," and Officer McElroy replied that he would "write a disciplinary charge against [Georges]" if Georges filed a grievance. *Id.* Georges states he "was deterred from writing the incident up and had to leave the law library without being able to save all his legal work." *Id.*

The next day, Georges tried to enter the law library with a pass but was stopped by Officer McElroy "because he believed that [Georges] did not move fast enough on the prior day." *Id.* ¶ 7. Officer McElroy ordered Georges to "return to his cell because he terminated [Georges'] access" to the library. *Id.* Georges asserts that Officer McElroy did this "to punish [Georges] because [Officer McElroy] believed that [Georges] filed a grievance . . . ." *Id.* Georges tried to "reason with [Officer McElroy,] who started to yell and verbally abuse [Georges] with curse words like a mad man to the point that a supervisor had to be called." *Id.* ¶ 8.

A supervisor, identified only as Williams, arrived at the library, at which time "[Officer McElroy] told the supervisor that he did not want to allow [Georges] to enter the law library ever again because [Georges] took too long to get off the computer the day before." *Id.* ¶ 9. "[Officer] McElroy asked the supervisor Williams to support his elimination of Plaintiff's access to the library indefinitely, and to write him a disciplinary charge for abusing the law library too often." *Id.* Williams spoke with the law librarian, who "explained that it was not unusual for [Georges] to have extended access to the law library, because he granted [Georges] extended access based on a court scheduling order . . . ." *Id.* ¶ 10. Williams declined to permanently bar Georges from

the law library and told Georges to return to his cell and come back to the library later. *Id.* ¶ 11. The law librarian explained that Georges' pass was only good for the current time. *Id.* Williams concluded that Officer McElroy did not have the authority to ban Georges from the library and allowed Georges to enter the library. *Id.* ¶ 12.

Based on the preceding factual allegations, Georges asserts that Officer McElroy violated Georges First Amendment rights by (1) retaliating against Georges "because [Officer McElroy] believed [Georges] wrote him up on a grievance, utilized the law library too much, and because [Georges] has filed grievances against prison staff"; (2) denying Georges access to the law library; and (3) "retaliating in order to deter [Georges] from exercising his constitutional right to complain and seek redress." *Id.* ¶¶ 18-20. In addition to damages, Georges seeks a declaratory judgment that Officer McElroy violated his First Amendment rights and injunctive relief ordering Officer McElroy to "[i]mmediately stop interfering with Plaintiff's law library access." *Id.* 4-5.

## II.   LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires a district court to *sua sponte* screen a civil complaint filed by a prisoner proceeding IFP for cognizable claims and to dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from suit. 28 U.S.C. § 1915(e)(2).

To survive a *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the plaintiff's claims are facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] pleading

4

that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim." *Durham v. Kelley*, 2023 WL 6108591, at *2 (3d Cir. Sept. 19, 2023). Moreover, "[c]omplaints filed *pro se* should be construed liberally and held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## III.    ANALYSIS

### A.  Georges' Requests for Injunctive and Declaratory Relief are Moot

Georges requests an injunction ordering Officer McElroy to "[i]mmediately stop interfering with [Georges'] law library access." Am. Compl. at 5. He also requests a declaratory judgment finding that Officer McElroy violated his First Amendment rights. *Id.* at 4-5. These requests are moot, however, because Georges has been transferred from EJSP to a different prison. "An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993)), *as amended* (May 29, 2003); *see also Mayon v. Capozza*, 2015 WL 4955397, at *5 (W.D. Pa. Aug. 19, 2015) ("A prisoner's transfer or release from prison moots his claims for declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional."). Therefore, the Court will dismiss these claims as moot.

**B.  Georges Has Not Stated a Claim for Denial of Access to the Courts**

Georges alleges Officer McElroy violated his "First Amendment Right by denying [Georges] access to the library with intentions to ban him . . . ."  Am. Compl. ¶ 19.  There is no "freestanding right to a law library or legal assistance."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The Court construes this claim as a First Amendment access-to-courts claim instead.

"[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis*, 518 U.S. at 354-55).  This requires Georges to plausibly plead facts that suggest he "suffered an 'actual injury' [by] los[ing] a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and that he has "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."  *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).  "To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  *Id.* at 205-06 (quoting *Christopher*, 536 U.S. at 416-17).

Georges has not satisfied this standard because he has not described an underlying claim that he lost due to Officer McElroy's actions.  He also has not alleged that he has no other remedy available to him other than this lawsuit.  Accordingly, the Court will dismiss his access-to-courts claim without prejudice for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).

**C.  Georges Has Stated a Claim for Retaliation With Respect to Officer McElroy's June 24, 2021 Actions**

Georges alleges that Officer McElroy retaliated against him by preventing Georges from filing a grievance about Officer McElroy's June 24, 2021, and by denying Georges access to the law library on June 25, 2021.  Am. Compl. ¶¶ 18, 20.  "To state a claim for retaliation, a prisoner

6

must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (cleaned up).  The Court concludes that Georges has stated a retaliation claim stemming from Officer McElroy's June 24, 2021 actions, but not for Officer McElroy's June 25, 2021 actions.

Georges alleges that Officer McElroy threatened to file a disciplinary report against Georges if Georges filed a grievance on June 24, 2021.  Am. Compl. ¶ 6.  Filing prison grievances "implicates conduct protected by the First Amendment," *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), and there is no "substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other." *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016).  Officer McElroy's threat to file a disciplinary report could be considered an adverse action. *See Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) ("[H]is alleged act of retaliation is a particular kind — one taking the form of the official's own speech."); *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001) (internal citation omitted) (holding public official's speech may be a retaliatory act when there was "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow").  Assuming the truth of the facts alleged in the Amended Complaint and giving Georges the benefit of all reasonable inferences, he has plausibly alleged a retaliation claim for this conduct.[3]

---

[3] This claim shall proceed against Officer McElroy in his individual capacity only.  The Eleventh Amendment bars a suit against Officer McElroy in his official capacity because a suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930-31 (1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

However, Georges has not alleged a retaliation claim based on Officer McElroy's attempt to bar him from the law library on June 25, 2021.  As discussed *supra* Section III.B, there is no freestanding right to a law library, and Georges has not pled enough facts to state an access-to-courts claim.  Georges' conclusory statement that Officer McElroy tried to stop him from entering the library "because [Officer McElroy] believed that [Georges] filed a grievance" the previous day, Am. Compl. ¶ 7, is mere speculation by Georges.  *See Peñalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 n.7 (2007) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'")).  Accordingly, Georges has not pled facts that plausibly suggest he was engaging in constitutionally protected conduct on June 25, 2021.  The Court will dismiss this claim without prejudice for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.     CONCLUSION

For the reasons stated above, Georges may **PROCEED** with his claim that Officer McElroy, in his individual capacity only, retaliated against him on June 24, 2021, his access-to-courts claim and retaliation claim stemming from Officer McElroy's June 25, 2021 actions will be **DISMISSED** *without prejudice*, 28 U.S.C. § 1915(e)(2)(B)(ii), and his requests for a declaratory judgment and injunctive relief will be **DISMISSED** *as moot*.  An appropriate Order accompanies this Opinion.

**10/17/2023**
Date

Evelyn Padin, U.S.D.J.